IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gilberto P. Ayala, | No. CV-11-1424-PHX-PGR (LOA) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles L. Ryan, et. al, | |
| Respondents. | |

Petitioner has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, doc. 1. Respondents have filed an Answer, doc. 10, to which Petitioner has replied, doc. 15. For the reasons set forth below, the Petition should be denied.

**I. Background**

  **A. Indictment, Trial, and Sentence**

On August 24, 2005, Petitioner was indicted in the Arizona Superior Court, Maricopa County, for second-degree murder, a Class 1 felony and domestic violence offense, based on the July 24, 2005 death of his wife. (Respondents' Exh. A)  Petitioner's case proceeded to trial.[1]  (Respondents' Exh. B, Items 41, 47, 49, 58, 60, 66[2])  On March 15, 2006, the jury convicted Petitioner of the lesser included offense of reckless manslaughter, a class 2 dangerous offense. (Respondents' Exh. B, Item 66)  Petitioner waived his right to

---

[1] The Honorable Warren J. Granville presided.

[2] Consistent with Respondents' citations to the record, references to "Item" numbers correspond to Bates numbers in the lower left hand corner of the exhibits.

1  have a jury determine aggravating factors and admitted that the victim's family suffered
2  emotional harm. (*Id.*) On June 9, 2006, the trial court found an additional aggravating
3  factor, the domestic violence occurred in the presence of children, and sentenced Petitioner
4  to a 15-year aggravated term of imprisonment, with credit for 310 days presentence incar-
5  ceration. (Respondents' Exh. B, Item 74)

### B. Direct Appeal

On June 12, 2006, Petitioner filed a timely notice of appeal. (Respondents' Exh. A, Item 75) Petitioner's appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1969), advising the court that counsel could find no arguable legal issues to raise on appeal, and requesting that the appellate court review the record for fundamental error and that Petitioner be permitted leave to file a *pro se* brief. (Respondents' Exh. C) Although Petitioner was granted leave to do so, he did not file a supplemental brief. (Respondents' Exh. C) On October 2, 2007, the Arizona Court of Appeals issued a memorandum decision affirming Petitioner's convictions and sentences. (Respondents' Exh. C) The appellate court concluded that, on review of the trial record, there was no reversible error. (*Id.*) Petitioner did not seek review in the Arizona Supreme Court. (Respondents' Exh. D)

### C. Post-Conviction Review

On January 4, 2008, Petitioner filed a notice of post-conviction relief in the trial court and subsequently filed a supporting petition. (Respondents' Exhs. E, doc. 1-1) On October 1, 2008, the trial court denied relief. (Respondents' Exh. G) On November 5, 2008, Petitioner sought review from the denial of the trial court's denial of his petition for post-conviction relief. (Respondents' Exh. H) On December 30, 2009, the Arizona Court of Appeals denied review. (Respondents' Exh. I) On May 20, 2010, the Arizona Supreme Court denied review. (Respondents' Exh. J)

### D. Petition for Writ of Habeas Corpus

On July 18, 2011, Petitioner filed the pending Petition for Writ of Habeas Corpus in this Court. (Doc. 1) Respondents assert that the Petition should be dismissed as untimely.

Respondents alternatively argue that Petitioner's claims lack merit. Petitioner argues that equitable tolling applies and that he is entitled to habeas corpus relief.

**II.  Statute of Limitations**

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") established a one-year period in which to file a petition for writ of habeas corpus in federal court. 28 U.S.C. § 2244(d)(1).

Title 28 U.S.C. § 2244 provides, in pertinent part, that:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

28 U.S.C. § 2244(d). The one-year limitations period is tolled during the time that a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d); *Hemmerle v. Schriro*, 495 F.3d 1069, 1074 (9th Cir. 2007) (stating that "in Arizona, post-conviction 'proceedings begin with the filing of the Notice'. . . Thus, where notice is filed in conformity with the pertinent Arizona statutory provisions and contains a specific prayer for relief in the form of a request for a new trial, 'it is sufficient to toll the AEDPA statute of limitations.'").

To assess the timeliness of the Petition for Writ of Habeas Corpus, the Court must first determine the date on which Petitioner's conviction became "final by the conclusion of direct review." 28 U.S.C. § 2244(d)(1)(A). Here, following a jury trial, Petitioner was sentenced and filed a timely notice of direct appeal. The Arizona Court of Appeals affirmed Petitioner's conviction and sentence on October 2, 2007. (Respondents' Exh. C)  Petitioner did not seek review in the Arizona Supreme Court. Accordingly, his conviction became final on November 2, 2007, thirty days after the Arizona Court of Appeals dismissed his direct appeal. *See* 28 U.S.C. § 2244(d)(1)(a); *Hemmerle v. Schriro*, 495 F.3d 1069, 1072-74 (9th Cir. 2007) (stating that direct appeal is final upon expiration of time for seeking further

- 3 -

appellate review); Ariz.R.Crim.P. 31.19(a) (establishing 30-day limit for petitioning Arizona Supreme Court to review court of appeals' decision on direct appeal.) Thus, the AEDPA limitations period commenced the following day and ran for 63 days until Petitioner filed a notice of post-conviction relief on January 4, 2008. 28 U.S.C. § 2244(d). (Respondents' Exh. E)  The statute of limitations remained tolled until May 20, 2010, when the Arizona Supreme Court denied review of the post-conviction proceedings. (Respondents' Exhs. G, H, I, J)  Thus, because 63 days of the limitations period had already run, it expired 302 days later on March 17, 2011. Petitioner did not file his pending Petition for Writ of Habeas Corpus until July 18, 2011. (Doc. 1)  Accordingly, it is untimely and subject to dismissal unless equitable tolling applies.

Section 2244(d)'s limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar. *Holland v. Florida*, ___ U.S.___, 130 S.Ct. 2549, 2560 (2010); *Waldron-Ramsey v. Pacholke,* 556 F.3d 1008, 1011 n. 2 (9th Cir. 2009).  A petitioner is entitled to equitable tolling only if he establishes two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "The diligence required for equitable tolling purposes is  reasonable diligence, not maximum feasible diligence." *Holland*, 130 S.Ct. at 2565 (internal citations and quotations omitted).

Petitioner asserts that his untimeliness should be excused because he had previously filed a timely § 2254 petition in this District Court that was dismissed, without prejudice, based on his failure to pay the filing fee before Petitioner received the Court's order directing him to pay that fee. (Docs. 1, 15) The District Court's records reflect that on March 14, 2011, Petitioner commenced a timely habeas corpus proceeding in this Court, *Gilberto P. Ayala v. Charles L. Ryan*, 2:11cv1424-PGR-LOA ("*Ayala I*"). On April 20, 2011, the Court denied Petitioner's request to proceed *in forma pauperis* and directed him to pay the $5.00 filing fee

- 4 -

1 within thirty days of the date of the order. (*Ayala I*, Doc. 4[3]) The order directed the Clerk of
2 Court to dismiss the case, without further notice to Petitioner, if he failed to timely pay the filing
3 fee. (*Id.*) Less than thirty days later, on May 16, 2011, Petitioner filed a notice of change of
4 address. (*Ayala I,* Doc. 5) The docket does not reflect that the Court's April 20, 2011 order was
5 mailed to Petitioner at his new address. On June 3, 2011, the Court dismissed the case without
6 prejudice based on Petitioner's failure to pay the filing fee. (*Id.*, Doc. 6) On June 13, 2011, the
7 Court received returned mail addressed to Petitioner - the April 20, 2011 Order - marked
8 "undeliverable." (*Id.*, Doc. 7) The docket reflects that the Court re-sent the April 20, 2011
9 Order to Petitioner on June 14, 2011. On June 27, 2011, Petitioner paid the $5.00 filing fee.
10 (*Id.*, Doc. 8)

11 Petitioner states that he did not receive the April 20, 2011 order, which directed him
12 to pay the filing fee within thirty days of that order, until June 17, 2011. (*Ayala I*, Doc. 15 at 3)
13 The docket, which indicates that the order was mailed to Petitioner's new address on June 14,
14 2011, supports Petitioner's assertion. Petitioner states that, because he received the order
15 dismissing his case, it appeared "there had been some kind of mix-up or mistake." (*Id.*, Doc.
16 15 at 3) Petitioner then filed the pending Petition for Writ of Habeas Corpus on July 18, 2011.

17 The Court finds that Plaintiff has established extraordinary circumstance to justify
18 equitable tolling. Petitioner had filed a timely Petition for Writ of Habeas Corpus. Although,
19 as Respondents note, Petitioner's failure to pay the $5.00 filing fee provided a basis for
20 dismissing the Petition, the Court gave Petitioner an additional thirty days to pay the filing fee.
21 (*Ayala I*, Doc. 4) Then, despite receiving a timely notice of Petitioner's change of address
22 before the deadline for paying the filing fee, the Court failed to re-send the April 20, 2011 order
23 to that new address. (*Id.*, Doc. 5) The Court dismissed the case on June 3, 2011. (*Id.*, Doc. 6)
24 After *Ayala I* was dismissed, the Court received the returned mail addressed to Petitioner, which

---

[3] Citations to "*Ayala I*, Doc." are to the docket in *Gilberto P. Ayala v. Charles L. Ryan*, 2:11cv1424-PGR-LOA.

prompted the Court to resend the April 20, 2011 order. (*Id.*, Doc. 7) Within weeks after receiving the Court's April 20, 2011 order and the order of dismissal, Petitioner paid the filing fee in *Ayala I* and commenced the pending habeas corpus proceeding.

The Court's failure to resend the April 20, 2011 order to Petitioner, despite having received a timely notice of his change of address, was an "external force" beyond Petitioner's control. *See Johnson v. Hunter*, 2006 WL 213725, * 3 (N.D.Cal. January 26, 2006) (finding that the court's inadvertent error which led to the petition being untimely, "is precisely the type of uncontrollable event that equitable tolling was meant to address."). Petitioner followed the proper procedure for notifying the Court of his address, but the Court inadvertently failed to take action upon receipt of that information. As a result of the Court's failure to resend the April 20, 2011 order to Petitioner's correct address, he did not receive that order, which directed him to pay the filing fee by May 20, 2011, until after his case was dismissed. When the Court did resend the April 20, 2011 order to Petitioner on June 14, 2011 - after the case had been dismissed - Petitioner paid the filing fee a mere ten days after he received that order on June 17, 2011. (Doc. 15 at 3; *Ayala I*, Doc. 8)  Equitable tolling is appropriate on the facts of this case. *See Corjasso v. Ayers*, 278 F.3d 874, 878 (9th Cir. 2002) (applying equitable tolling where court incorrectly dismissed a petition filed by a *pro se* prisoner because he used a "whited-out cover sheet from the wrong district."). Petitioner filed a timely habeas corpus petition, timely notified the Court of his address change, and promptly paid the filing fee when he finally received the Court's Order directing him to do so. The Court's inadvertent failure to send its order to Petitioner's current address upon receipt of the notice of change of address was the glitch that derailed Petitioner's timely habeas corpus petition.

The Court also finds that Petitioner has diligently pursued his claims. Petitioner filed a timely notice of change of address in *Ayala I*. Petitioner received the Court's order dismissing that case on or about June 17, 2011. Less than a month later, he filed the pending Petition for Writ of Habeas Corpus. *Johnson*, 2006 WL 213725 at * 3 (finding petitioner diligently pursued his claims when he filed a new habeas petition only three weeks after learning that his initial

- 6 -

petition had been dismissed.). The foregoing circumstances justify equitably tolling of the AEDPA's statute of limitations. Accordingly, his § 2254 Petition is deemed timely and the Court will consider Petitioner's claims.

**III. Analysis**

Petitioner presents several claims of ineffective assistance of trial and appellate counsel in his Petition. (Doc. 1) Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted the state remedies available to him. 28 U.S.C. § 2254(b). When seeking habeas relief, petitioner bears the burden of showing that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981) (*per curiam*). The record reflects, and Respondents concede, that Petitioner properly exhausted the available state remedies and his claims are properly before this Court on habeas corpus review. (*See* doc. 10 at 9) Thus, the Court turns to the merits of Petitioner's claims.

**A. Standard of Review**

This Court's review of Petitioner's claims is constrained by the applicable standard of review set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the AEDPA. The ADEPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). The standard in § 2254(d) is "meant to be" "difficult to meet." *Harrington v. Richter*, 562 U.S., ___ , 131 S.Ct. 770, 786 (2011). Section "2254 stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings." *Id.* (citations omitted). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunction in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)). If a habeas corpus petition includes a claim that has been "adjudicated on the merits in State court proceedings," federal habeas relief is not available unless it is shown that the state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme

Court, § 2254(d)(1); *Green v. Fisher*, __ U.S.__, 132 S.Ct. 38, 43 (2011); *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2). *Richter*, 131 S.Ct. at 785; *see also Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006). This is a "difficult to meet," *Richter*, 562 U.S. ___, 131 S.Ct. at 786, and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*) (citation and internal quotation marks omitted). A petitioner bears the burden of proof. *Id*. at 25.

        To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court which existed at the time of the state court's decision. *Green*, 132 S.Ct. at 44. Under § 2254(d), a state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted); *Williams*, 529 U.S. at 411. A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Id.* at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005). An incorrect application of federal law does not satisfy this standard. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable."). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 131 S.Ct. at 786 (citing *Yarborough*, 541 U.S. at 664). "'[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determination.'" *Id.* The Court will

- 8 -

consider Petitioner's claims in view of the foregoing standard.

## C. Controlling Supreme Court Precedent

The controlling Supreme Court precedent on claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must show that counsel's performance was objectively deficient and that counsel's deficient performance prejudiced the petitioner. *Id.* at 687. To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Id.* "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Review of counsel's performance is "extremely limited." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998). Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689.

To establish a Sixth Amendment violation, petitioner must also establish that he suffered prejudice as a result of counsel's deficient performance. *Id.* at 691-92. To show prejudice, petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Hart*, 174 F.3d at 1069; *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998). The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). The court may proceed directly to the prejudice prong. *Jackson v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing *Strickland*, 466 U.S. at 697). A court, however, may not assume prejudice solely from counsel's allegedly deficient performance. *Jackson*, 211

1 F.3d at 1155.

2 "'Surmounting *Strickland's* high bar is never . . . easy.'" *Richter*, 131 S.Ct. 770, 786
3 (quoting *Padilla v. Kentucky*, __ U.S.___, 130 S.Ct. 1473, 1485 (2010)). Establishing that a
4 state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult,
5 because both standards are "highly deferential," and because *Strickland's* general standard has
6 a substantial range of reasonable applications. *Richter*, 131 S.Ct. at 788 (citations omitted). The
7 issue under § 2254(d) is not whether counsel's actions were reasonable, but "whether there is
8 any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

9 **D.  Ground One - Ineffective Assistance of Counsel**

10 In Ground One, Petitioner argues that trial counsel was ineffective for failing to
11 advise him that waiving the right to a jury trial regarding aggravating factors would lower the
12 burden of proof for determining those factors and could result in the loss of Petitioner's ability
13 to challenge an increase in his sentence. (Doc. 1 at 6) The state courts rejected this claim on
14 post-conviction review. (Respondents' Exhs. G, H, I, J)  Petitioner has not shown that the state
15 court's determination was contrary to, or an unreasonable application of, *Strickland*. See 28
16 U.S.C. § 2254(d)(1).

17 A jury found Petitioner guilty of Reckless Manslaughter based on evidence that he
18 "had beaten his wife to unconsciousness in their . . . home and in the presence of their three
19 young children.  He then carried his unconscious wife and directed his children into the family
20 care. [Petitioner] then drove his dying wife and children to California,. . . [and] Petitioner's wife
21 died." (Doc. 1-1 at 118; doc. 1-1 at 21-21)  After the jury returned its verdict, the State moved
22 for a hearing in accordance with *Blakely v. Washington*, 542 U.S. 296 (2004), to establish
23 emotional harm to the children as an aggravating factor. (Doc. 1-1 at 22-23)  "To eliminate the
24 need to re-call the children as witnesses, [Petitioner waived] a jury for the *Blakely* issue." (*Id*.)
25 In his Petition, Petitioner asserts that trial counsel failed to advise him that by waiving his Sixth
26 Amendment right to have a jury determine aggravating factors beyond a reasonable doubt, so-
27 called *Blakely* rights, he was also agreeing to a lower standard of proof for aggravating factors.

28

- 10 -

On post-conviction review, the State court found that the trial court had engaged "in a full *Boykin*[*v. Alabama*, 395 U.S. 238 (1969)] colloquy, where [Petitioner] knowingly, intelligently, and voluntarily waived *Blakely* rights." (Respondents' Exh. G at 2; docket 1-1 at 119) The State court further found that Petitioner's argument was flawed because the record of the June 9, 2006 sentencing proceedings reflected that the State court had "found the aggravating factor of emotional harm to the children . . . on a proof standard beyond a reasonable doubt." (Respondents' Exh. G; doc. 1-1 at 118-139) Thus, the State court concluded that, because the trial court found the aggravating factor of emotional harm to the children beyond a reasonable doubt, trial counsel was not ineffective for failing to advise Petitioner that waiving his *Blakely* rights to have a jury determine aggravating factors would result in the application of a lower standard of proof to determine those factors.

The record reflects that the trial court advised Petitioner of his right to have a jury determine aggravating factors beyond a reasonable doubt, including the alleged factor that the victim's family suffered emotional harm. (Doc. 1-1 at 28-31) The court further explained that the State would be "obliged to present evidence, witnesses, on that issue," and that defense counsel "would have the right to cross-examine" witnesses." (*Id.* at 29) Petitioner stated that he understood those rights and he voluntarily agreed to waive those rights. (*Id.* at 29-30) He also stated he understood that he could receive a sentence of up to 21 years in prison. (*Id.* at 30) The trial court found that Petitioner knowingly, intelligently, and voluntarily waived his *Blakely* rights. (Doc. 1-1 at 31) At the conclusion of the June 9, 2006 sentencing hearing, the court found "beyond a reasonable doubt that this was a domestic violence in the presence of children." (Doc. 1-1 at 43-44) In view of the foregoing, Petitioner has not shown that the State court's rejection of his claim of ineffective assistance of trial counsel was contrary to, or based on a unreasonable application of, *Strickland*, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

In Ground One, Petitioner further argues that had trial counsel informed him that waiving his *Blakely* rights would preclude him from challenging his sentence on appeal, he

- 11 -

would have insisted on a jury determination of aggravating factors. (Doc. 1 at 6)  First, Petitioner has not shown that counsel's performance fell below an objective standard of reasonableness on this issue. Even if counsel failed to advise Petitioner of the appellate consequences of waiving his *Blakely* rights, the Supreme Court has not articulated a Sixth Amendment right to have counsel provide advice regarding every possible consequence in the appellate process. *See Filiaggi v. Bagley*, 445 F.3d 851, 856 (6th Cir. 2006) (stating that "[w]e are aware of no Supreme Court precedent . . . that conditions the validity of a jury waiver upon a defendant's understanding of the appellate process."). Moreover, even if counsel's performance was deficient, Petitioner cannot establish prejudice because the trial court advised Petitioner of the consequences of his *Blakely* waiver. (Doc. 1-1 at 27-31); *United States v. Thorton*, 23 F.3d 1532, 1533-34 (9th Cir. 1994) (holding that alleged misadvice of counsel may be overcome by correct advice given during a colloquy).

Finally, the court found Petitioner's waiver of his *Blakely* rights a mitigating circumstance, stating that his decision "save[d] his [minor son] or other members of the family" from having to return to court to testify. (Doc. 1-1 at 44-45)

For the reasons set forth above, Petitioner has not shown that the state court's rejection of his claim of ineffective assistance of trial counsel was contrary to, or an unreasonable application of, *Strickland*, and he is not entitled to habeas corpus relief on that claim.

**E.  Grounds Two, Three and Four - Ineffective Assistance of Appellate Counsel**

In Grounds Two, Three, and Four, Petitioner argues that appellate counsel was ineffective for: failing to appeal trial counsel's failure to present mitigating evidence of Petitioner's impaired ability to understand the seriousness of his conduct as a result of having consumed a considerable quantity of alcohol before the incident, the victim's history of alcohol and drug abuse, and abuse of Petitioner. (Doc. 1 at 7-9)  Petitioner presented these claims on post-conviction review and the State court rejected them. (Respondents' Exh. G at 3) First, the court found that the basis of Petitioner's claim was wrong because, contrary to his assertion,

trial counsel did not proffer the mitigating evidence, "but the trial court precluded it." (Respondents' Exh. G at 3) The State court further explained that the evidence at trial was such that the court "did not find [Petitioner's] claim that the victim's past rendered her deserving of her fate relevant," and "would not have found [Petitioner's] voluntary impairment material enough to lower his sentence from the 15 years imposed." (*Id.*) Accordingly, the post-conviction court found that Petitioner could not establish either prong of the *Strickland* test. (*Id.*)

As the State court found, the record reflects that, contrary to Petitioner's assertion, trial counsel did proffer the mitigating evidence at issue. (Doc. 1-1 at 43) The State court, however, rejected that evidence, stating that "I don't believe that [the victim's] past drug abuse or abuse was relevant to sentencing [because] there didn't seem to be any drug issues related to the trial." (*Id.*) Appellate counsel was not ineffective for failing to argue that counsel had not presented certain mitigating evidence, when the record reflected that counsel had presented such evidence. Petitioner has not shown that the State court's rejection of his claims of ineffective assistance of counsel was contrary to, or an unreasonable application of, *Strickland*. 28 U.S.C. § 2254(d). Thus, Petitioner is not entitled to habeas corpus relief on his claims of ineffective assistance of counsel.

**IV. Conclusion**

Based on the foregoing, the Petition for Writ of Habeas Corpus should be denied and dismissed because Petitioner's claims lacks merit.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus, doc. 1, be **DENIED.**

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have (14) fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6, Federal Rules of Civil Procedure. Thereafter, the parties have (14) fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

Dated this 31st day of May, 2012.

*[signature]*
Lawrence O. Anderson
United States Magistrate Judge